Case 7:24-cv-00331   Document 62   Filed on 12/05/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas

**ENTERED**
December 05, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| DURACARBON LATINAMERICA, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. 7:24-CV-331 |
| § | |
| SIMEC USA CORPORATION, *et al.*, § | |
| § | |
| Defendants. § | |

## ORDER & OPINION

Duracarbon Latinamerica, LLC ("Duracarbon USA") sold graphite electrodes to SIMEC International, S.A. de C.V. ("SIMEC Mexico") and Companhia Siderúrgica do Espírito Santo S.A. ("SIMEC Brazil"). The electrodes were shipped from China to Mexico and Brazil. SIMEC Mexico and SIMEC Brazil accidentally sent a portion of their payments to Duracarbon Latinoamerica S.A. de C.V. ("Duracarbon Mexico"), a different and unrelated company.

Duracarbon sued SIMEC Mexico, SIMEC Brazil, and their parent company, Grupo SIMEC, S.A.B. de C.V. ("Grupo SIMEC") for breach of contract and unjust enrichment. (Second Am. Compl., Doc. 34)  Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil challenge the Court's personal jurisdiction over them as well as whether Duracarbon properly perfected service on them.[1] (Motion to Dismiss, Doc. 49)  After reviewing the record and the applicable law, the Court concludes that SIMEC Mexico, SIMEC Brazil, and Grupo SIMEC are not subject to personal jurisdiction in Texas in this lawsuit.

---

[1] Duracarbon also sued SIMEC USA Corporation. SIMEC USA filed an Answer (Doc. 47) and does not join in the Motion to Dismiss.

1 / 13

I.     **Jurisdictional Facts**[2]

    A. **Corporate Entities**

        1. **Duracarbon USA**

Duracarbon USA sells graphite products for use in steel manufacturing. The company bases its business in Mission, Texas. For the transactions at issue in this case, it sourced the graphite products from China. (*See* August Invoice, Doc. 52–9)

Lei Zhang co-founded Duracarbon USA in February 2021. He previously worked as an attorney for Duracarbon Mexico, a Mexican company that also sells graphite for steel manufacturing. His employment and involvement with the Mexican company ended in January 2021, and the following month he co-founded Duracarbon USA in Texas.

Duracarbon USA and Duracarbon Mexico are unrelated companies with no ongoing ties between them.

        2. **SIMEC**

Grupo SIMEC is a Mexican corporation. As a company publicly traded on the New York Stock Exchange, Grupo SIMEC complies with reporting requirements with the Securities and Exchange Commission, presenting "consolidated financial statements" that include the financials of the subsidiaries that it controls. (SEC Statement, Doc. 52–22, 87 (explaining that "[c]ontrol is obtained when the company possesses the power to govern the financial and operative policies of an entity in order to obtain benefits from its activities"))

Grupo SIMEC owns 100% of SIMEC Mexico, a Mexican corporation with operations in Mexico. Grupo SIMEC also wholly owns SIMEC Brazil, a Brazilian company with operations in Brazil.

---

[2] In resolving a Motion to Dismiss for lack of personal jurisdiction, the Court "can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 313 (5th Cir. 2025).

Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil have no offices or personnel in Texas. The record does not reflect that any of these companies own assets in Texas or have bank accounts in the state.

Grupo SIMEC owns 100% of SIMEC USA, which is incorporated and headquartered in California.

Sigosa Steel Company is a corporation registered in Texas and with a mailing address in Brownsville, Texas. The company shares names with a Mexican subsidiary of Industrias CH, Aceros y Laminados Sigosa, S.A. de C.V., but is not that company's direct subsidiary or otherwise directly related to it. (Siegrist Decl., Doc. 55–1, ¶ 4) Sigosa maintains a website identifying an address in Brownsville and displaying the "Grupo SIMEC" logo. The president of Sigosa Steel, Raul Virgil Gonzalez, has previously served on the Grupo SIMEC board of directors. In an unrelated matter before the United States Court of International Trade, Grupo SIMEC requested additional time to respond to a questionnaire, and in that request indicated that Sigosa was its "USA distributor." (CIT Filing, Doc. 52–23, 254) In that filing, Grupo SIMEC noted that it "believes that Sigosa should not be collapsed with SIMEC because Sigosa's operations are completely separate from those of SIMEC." (*Id.* at 382) Grupo SIMEC described itself as "really two companies (SIMEC and Sigosa)[.]" (*Id.* at 258) In the current matter, Grupo SIMEC's General Counsel declares that Grupo SIMEC owns no stock in Sigosa, does not control Sigosa's operations, and that the two companies "maintain separate corporate headquarters." (Siegrist Decl., Doc. 55–1, ¶ 5)

**B. 2021 Transaction**

In March 2021, SIMEC Mexico ordered 120,000 kilograms of graphite electrodes from Duracarbon USA.[3] (Purchase Order, Doc. 52–7) SIMEC Mexico appears to have requested three shipments–for April, May, and June of 2021–for arrival at one of its plants in Mexico.

---

[3] The document references "KGS" as the unit, which the Court construes as a reference to kilograms.

Duracarbon USA timely fulfilled the order by shipping the electrodes in four batches, sourcing them from China. Duracarbon USA directed those shipments to SIMEC Mexico. No party presents evidence that the shipped product passed through Texas en route to Grupo SIMEC subsidiaries.

In November 2021, SIMEC Mexico made a payment of $77,321.55 to Duracarbon USA, in payment for the first and last shipments of electrodes. (Nov. 2021 Payment, Doc. 52–8; Zhang Decl., Doc. 52–28, ¶ 17) The following month, SIMEC Mexico made another payment of almost $155,000, but paid Duracarbon Mexico instead of Duracarbon USA. (Dec. Payment, Doc. 52–13)

After discovering that SIMEC Mexico sent the payment to the wrong payee, Zhang "reviewed all the pending purchase orders and payments from Grupo SIMEC-owned entities" to ensure that similar payment mistakes did not re-occur. (Zhang Decl., Doc. 52–28, ¶¶ 24–25) He noticed that SIMEC Brazil was scheduled to make a payment to Duracarbon USA on a prior order. Thus, in January 2022, Zhang contacted SIMEC Brazil to ensure payment would be made to Duracarbon USA. (*Id.* at ¶¶ 25–26) Despite this warning, SIMEC Brazil made the payment to Duracarbon Mexico. (Email, Doc. 52–12)

SIMEC USA had no involvement in these transactions. The California company "did not order the graphite electrodes, did not receive the[] shipments from [Duracarbon USA], did not make or authorize any payments, and was not involved in any negotiations or communications concerning" the invoices at issue. (Padilla Decl., Doc. 49–1, 2) In addition, Grupo SIMEC "has always treated SIMEC USA as an independent affiliate for U.S.-based operations only, with no authority over matters involving" Grupo SIMEC, SIMEC Mexico, or SIMEC Brazil. (*Id.* at 3)

### C. Procedural History

Duracarbon USA sued Grupo SIMEC, SIMEC Mexico, SIMEC Brazil, and SIMEC USA for breach of contract and unjust enrichment, seeking damages totaling $302,995.10. (Second Am.

Compl., Doc. 34 ¶¶ 1, 3) Duracarbon USA alleges that Grupo SIMEC bears vicarious liability for its subsidiaries' actions. (*Id.* at ¶¶ 26–27)

Duracarbon USA served SIMEC USA and SIMEC Mexico through SIMEC USA's registered agent in California, contending that "service of process on SIMEC USA was appropriate to effectuate service on SIMEC Mexico, given the significant operational and financial connections between SIMEC USA and SIMEC Mexico." (Memorandum, Doc. 13, ¶ 4; *see also* Return of Service, Doc. 7)

Duracarbon USA requested the Court's authorization to serve SIMEC Brazil and Grupo SIMEC via service on SIMEC USA, arguing that "the substantial financial and operational relationships" between the entities justified such service. (Motion, Doc. 15) The Court granted the motion, finding that service on SIMEC USA would "provide adequate and fair notice" of the lawsuit to SIMEC Brazil and Grupo SIMEC. (Order, Doc. 39; Order, Doc. 41)

Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil now seek dismissal for lack of personal jurisdiction and for improper service. (Motion to Dismiss, Doc. 49)

II. **Governing Standard**

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The plaintiff need only make a prima facie case that the court has personal jurisdiction over the defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012). When faced with a motion to dismiss for lack of personal jurisdiction, a district court "may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). As part of this determination, the court "must accept as true the plaintiff's uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits

and other documentation." *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (cleaned up).

### III. Analysis

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). In this case, the two tests are co-extensive because Texas's long-arm statute "extends to the limits of the United States Constitution[.]" *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 313 (5th Cir. 2025) (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

The Supreme Court has recognized general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017). In this matter, Duracarbon USA argues that the Court may exercise both forms of personal jurisdiction over the Defendants. As courts apply the personal jurisdiction analysis on a party-by-party basis, *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980), Duracarbon USA must demonstrate that personal jurisdiction attaches to each of Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil.

#### A. General Jurisdiction

Under general jurisdiction, a plaintiff can sue a business entity in the state of its incorporation or where it maintains its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Alternatively, a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For general jurisdiction, a corporation typically must

have a physical presence in the forum state to be at home there. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 339 (5th Cir. 2020).

In the present matter, no party claims that Grupo SIMEC, SIMEC Mexico, or SIMEC Brazil are incorporated in Texas or maintain a physical place of business in the state. In addition, Duracarbon USA presents no evidence that any of those companies has continuous and systematic affiliations with the state to an extent that would support the exercise of general jurisdiction.

Instead, Duracarbon USA argues that Grupo SIMEC "admits that it encompasses a 'USA Distributor' . . . called Sigosa Steel[, which] is registered in Texas and located in Brownsville, Texas[.]" (Response, Doc. 52, 16–17) Based on this purported admission, Duracarbon USA contends that Grupo SIMEC "through its sister company/subsidiary Sigosa Steel" is "fully 'at home' in Texas" and subject to personal jurisdiction. (*Id.*)

This argument, however, fails. As an initial matter, Duracarbon USA presents scant evidence supporting the alleged connection between Grupo SIMEC and Sigosa Steel. At most, Duracarbon USA points to Grupo SIMEC's representation to the Court of International Trade that Sigosa Steel was its "USA distributor[,]" and that Sigosa Steel maintains a website displaying the "Grupo SIMEC" logo. This evidence reveals only a business relationship between Grupo SIMEC and Sigosa Steel. In fact, in its CIT filing, Grupo SIMEC highlighted that it "believes that Sigosa should not be collapsed with SIMEC because Sigosa's operations are completely separate from those of SIMEC." (CIT Filing, Doc. 52–23, 382; *see also id.* at 258 (describing the two entities as "really two companies (SIMEC and Sigosa)") And Grupo SIMEC's General Counsel explains that Grupo SIMEC owns no stock in Sigosa, does not control Sigosa's operations, and that the two companies "maintain separate corporate headquarters." (Siegrist Decl., Doc. 55–1, ¶ 5) Based on this record, Duracarbon USA fails to demonstrate that a business relationship exists between Grupo SIMEC and Sigosa Steel so as to ascribe the latter's presence in Texas to Grupo SIMEC. And Duracarbon USA makes no argument that Sigosa Steel has any ties to SIMEC Mexico or

SIMEC Brazil.  Thus, Duracarbon USA has not established that general jurisdiction should apply to Grupo SIMEC, SIMEC Mexico, or SIMEC Brazil.

### B. Specific Jurisdiction

"To establish specific personal jurisdiction, three conditions must be met: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum State, (2) the plaintiff's claim arises out of or relates to those purposeful contacts with the forum, and (3) the exercise of personal jurisdiction must be fair and reasonable." *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 314 (5th Cir. 2025); *see also Jackson v. Tanfoglio Guiseppe S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010) (describing the three-step analysis).  The first prong focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  It also considers "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

When a plaintiff alleges a breach of contract, courts consider the "place of performance" as a "touchstone" of whether specific jurisdiction exists. *Sayers Constr., L.L.C. v. Timberline Constr., Inc.*, 976 F.3d 570, 573 (5th Cir. 2020) (finding no specific jurisdiction in Texas when Florida was the place of contractual performance); *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 345 (5th Cir. 2004) (finding no specific jurisdiction in Texas where "the material portions of the contract" were to be performed in West Africa).  In a breach of contract lawsuit, the place of performance is "the site of delivery" of the goods. *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981).  The fact that title to contracted-for goods passed through a state represents a strong jurisdictional contact with that state. *See Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992).

In contrast, the fact that one party to the contract maintains a presence in a state does not necessarily establish the required contacts in that forum. *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (noting that the defendants' "contact with Texas rests on nothing but the mere

fortuity that the plaintiff happens to be a resident of the forum"). A defendant's payment to the plaintiff in a particular state does not, by itself, suffice to establish personal jurisdiction. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("Given that the material performance occurred in Oklahoma, the fact that Harvey mailed payments to Texas does not weigh heavily in our determination."). And a "plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).

In the present matter, Duracarbon USA alleges breach of contract and unjust enrichment. (*See* Second Am. Compl., Doc. 34, 5–6) But the only connections between Texas and the transaction at issue include that Duracarbon USA maintains its principal place of business in the state, some of the communications regarding the contract occurred with Duracarbon USA representatives in Texas, and the company received payment at its bank account within the state. Beyond these fortuitous contacts, neither party's performance on the contract involved conduct in Texas. Duracarbon USA sourced the electrodes from China and shipped them to locations in Mexico and Brazil. The record does not demonstrate that the goods' route to those countries involved traversing the United States, much less Texas.

And Duracarbon USA's position falls even shorter when focusing on each specific defendant. The record has no evidence demonstrating that Grupo SIMEC or SIMEC USA had any direct contact with Duracarbon USA in connection with the order of electrodes. No record reflects that Grupo SIMEC participated in the ordering of the electrodes, the shipment of the goods, or the payment to Duracarbon USA. As for SIMEC USA, it presents evidence that it "did not order the graphite electrodes, did not receive the[] shipments from [Duracarbon USA], did not make or authorize any payments, and was not involved in any negotiations or communications

concerning" the invoices at issue. (Padilla Decl., Doc. 49–1, 2)  Duracarbon USA offers no controverting evidence.

SIMEC Mexico and SIMEC Brazil have some connection to the contract at issue.  Both companies received at least some shipments of the ordered electrodes, in their plants in Mexico and Brazil, respectively.  Only SIMEC Mexico, however, engaged in any conduct bearing on Texas.  Specifically, the company paid Duracarbon USA via an account registered with Frost Bank in Mission, Texas. (*See* Payment Confirmation, Doc. 52–8, 3)  But aside from this payment, Duracarbon USA does not demonstrate how SIMEC Mexico's or SIMEC Brazil's performance on the contract created a contact with Texas.  And the law renders clear that a mere payment to a bank account in Texas cannot by itself support the exercise of personal jurisdiction.

Duracarbon USA also broadens its argument by contending that its ties to the Defendants stems from "a years-long relationship covering several contracts, multiple communications, and multiple payments, all directed to a Texas entity that only exists in Texas and Defendants know it only exists in Texas[.]" (Resp., Doc. 52, 19)  These purported ties, contends Duracarbon USA, "are sufficient to establish Defendants' minimum contacts[.]" (Resp., Doc. 52, 19)

Duracarbon USA's own evidence defeats this position.  Its representative, Lei Zhang, explains that in February 2021, he and a partner formed Duracarbon USA in Texas. (Zhang Decl., Doc. 52–28, ¶¶ 8–10)  Only one month later, SIMEC Mexico submitted the purchase order that initiated the transaction at issue in this lawsuit.  This timing undercuts Duracarbon USA's representation of a "years-long" relationship between it and the Defendants.  And Duracarbon USA fails to provide specific evidence of the alleged "several contracts" involving any of the Defendants.

Duracarbon USA also argues that the Court should pierce the corporate veil and conclude that SIMEC Mexico, SIMEC Brazil, and SIMEC USA are alter egos of Grupo SIMEC. (Resp., Doc. 52, 3)  In making this argument, Duracarbon USA relies principally on the undisputed fact that

Grupo SIMEC trades on the New York Stock Exchange and in its corporate filings presents consolidated financial statements that include the financials of its 100% owned subsidiaries. For the following reasons, however, this argument also does not help Duracarbon USA.

"In making an alter ego determination, a court is concerned with reality and not form, and with how the corporation operated." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (cleaned up). As part of the inquiry, a court considers "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Diece-Lisa Indus., Inc. v. Disney Enterprises, Inc.*, 943 F.3d 239, 251 (5th Cir. 2019). The evidence must demonstrate that the parent company asserts a level of control over the subsidiary that goes "beyond the subsidiary's mere presence within the bosom of the corporate family." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999); *see also Licea v. Curacao Drydock Co., Inc.*, 952 F.3d 207, 214 (5th Cir. 2015) (noting that organizational charts are usually "irrelevant" to the issue of alter ego because they "only show the structure" rather than the "functional relationship" between the related companies). "[T]he maintenance of corporate formalities tips in favor of finding that the entities are not alter egos." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010); *see also Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990) (declining to find an alter ego even though one entity owned 100% of its subsidiaries, was responsible for corporate policy, funneled revenues into centralized accounts, and filed consolidated tax returns, as the corporate families' observation of corporate formalities "outweighed, albeit modestly[,]" those factors). To support piercing the corporate veil, the parent company must exercise

"pervasive control . . . over the internal business operations and affairs of the subsidiary." *Lovett v. Sanderson*, 184 F.3d 819 (5th Cir. 1999).

Here, Duracarbon USA fails to provide clear evidence that the Court should treat the Grupo SIMEC subsidiaries as mere alter egos of their corporate owner. Duracarbon USA relies on Grupo SIMEC's presentation of consolidated financial statements. That is insufficient. Duracarbon USA offers no evidence demonstrating that the corporate entities do not observe corporate formalities, or that Grupo SIMEC exerts such "pervasive control" over its wholly-owned subsidiaries that the latter cease to operate as separate corporate entities.

In addition, even if the Court treated SIMEC Mexico, SIMEC Brazil, and SIMEC USA as alter egos of Grupo SIMEC, such a conclusion–unsupported by the record–would still not create specific personal jurisdiction over any of those entities in this lawsuit. Duracarbon USA has failed to show how the contacts by any of those business entities has the requisite contacts with the state to support specific personal jurisdiction. Treating these companies as one does not change the fact that the Court cannot exercise specific personal jurisdiction over any of these entities in this lawsuit.

### C. Service of Process

Duracarbon USA appears to argue that this Court, in connection with its rulings as to service on Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil, found "deeply connected financial and operational ties" between the companies. (Resp., Doc. 52, 4) To the extent that Duracarbon USA contends that the Court's ruling as to service supports the exercise of personal jurisdiction over any entity, the Court rejects the argument. In its ruling, made on an *ex parte* basis, the Court found only that allowing service through the registered agent for SIMEC USA would "provide adequate and fair notice" of the lawsuit to the other defendant companies. (*See* Order, Doc. 39; Order, Doc. 41) The issue of service, of course, is distinct from whether a court can exercise personal jurisdiction over a non-resident entity. And the Court engaged in no analysis and made

no findings regarding the doctrine of alter ego in connection with its rulings on service. As a result, the Court finds that its prior rulings regarding service on Grupo SIMEC and its subsidiaries have no bearing on the issues that the Motion to Dismiss presents.

## IV. Conclusion

For these reasons, the Court concludes it lacks personal jurisdiction over Grupo SIMEC, SIMEC Mexico, and SIMEC Brazil.[4] As a result, it is:

**ORDERED** that Defendants SIMEC International, S.A. de C.V., Companhia Siderúrgica Do Espirito Santo S/A, and Grupo SIMEC, S.A.B. de C.V.'s Motion to Dismiss Under Rules 12(b)(2) and 12(b)(5) (Doc. 49) is **GRANTED**; and

**ORDERED** that Plaintiff Duracarbon Latinamerica, LLC's causes of action against Defendants SIMEC International, S.A. de C.V., Companhia Siderúrgica Do Espirito Santo S/A, and Grupo SIMEC, S.A.B. de C.V. are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

Signed on December 5, 2025.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge

---

[4] In light of this conclusion, the Court declines to reach whether Duracarbon USA properly served Grupo Mexico, SIMEC Mexico, or SIMEC Brazil.